**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ALEXANDER BOULTON, Individually and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 2:23-02304-SHL-cgc** |
| **MILLENNIUM SEARCH, LLC,** | § § | |
| **Defendant.** | § | |

**JOINT MOTION AND MEMORANDUM FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiff Alexander Boulton, in his individual capacity ("Boulton"), and Defendant Millennium Search, LLC ("Millennium") (together, the "Parties") hereby file this Joint Motion and Memorandum for Approval of FLSA Settlement. In support, the Parties would state and respectfully show the Court as follows:

## I.    INTRODUCTION

In this Fair Labor Standards Act ("FLSA") action, the Parties have reached a settlement agreement following good faith, arm's-length settlement negotiations between experienced wage-and-hour counsel. The Parties have agreed to release and resolve all wage-and-hour related claims, or any claims that Boulton could have asserted based on the facts alleged in the Original Complaint, and request the Court enter an order approving the settlement as fair and reasonable, and dismissing Boulton's individual FLSA claim with prejudice.

This Court has previously stated that it follows the majority of Circuits which require FLSA settlements to be approved by either the Department of Labor or a court of competent jurisdiction.

*See, e.g., Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024 (W.D. Tenn. 2016) (Lipman, D.J.) (noting that even though there is a circuit split on the issue and no direct guidance from the Sixth Circuit, "based on the unique purpose of the FLSA and the unequal bargaining power between employees and employers, this Court finds that FLSA settlements require approval by either the Department of Labor or a court."). Generally speaking, the proper procedure for obtaining court approval of a FLSA settlement is for the parties to present to the Court the proposed settlement, on which the Court may enter a stipulated judgment after scrutinizing the settlement for fairness. *See Thomas v. Dania Mgmt. Grp., Inc.*, No. 2:18-cv-02771-TLP-dkv, 2019 WL 11583347, at *1 (W.D. Tenn. Aug. 30, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). If the settlement reflects a reasonable compromise over disputed issues such as FLSA liability or computation of back wages, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

Here, the Parties' settlement agreement fairly resolves a bona fide dispute over whether Millennium can meet its burden to show that Boulton is exempt from the FLSA's overtime provisions and/or the amount of back wages allegedly owed. The proposed settlement is a reasonable resolution of that bona fide dispute reached following good faith, arm's-length settlement negotiations between experienced counsel which provides fair compensation to Boulton for his FLSA claim. The Parties respectfully request the Court approve the FLSA settlement as fair and reasonable.

## II.    FACTS & PROCEDURAL HISTORY

Boulton filed this lawsuit on May 12, 2023, alleging that Millennium violated the FLSA by misclassifying him as exempt from overtime and failing to pay him overtime compensation.

*See* Dkt. 1. Millennium answered the lawsuit on June 12, 2023, generally denying Boulton's claims and asserting various affirmative defenses. *See* Dkt. 13.

Boulton alleged that he worked for Millennium as a recruiter, was classified as exempt from overtime, and was paid on a salary rate basis. Boulton alleged he was misclassified as exempt, since his work as a recruiter was more appropriately described as "production-side" work rather than administering or managing Millennium's business. Millennium contends Boulton's primary job duties rendered him as exempt and denies that it owed Boulton any overtime wages. The Parties also disagreed over the amount of Boulton's alleged unpaid wages and damages.

Following the Court's initial scheduling conference (*see* Dkt. 22), the Parties, by and through their respective counsel, engaged in earnest, good faith, and arm's-length settlement negotiations in an attempt to resolve Boulton's individual FLSA claim. As a result of those negotiations, Boulton agreed to settle and release his FLSA claims (as well as any other claims that could have been asserted based on the facts alleged in this Original Complaint) in exchange for a total of $20,000. While the Parties dispute whether Boulton was properly classified as exempt, whether a two- or three-year limitations period applies, whether Boulton is entitled to liquidated damages under 29 U.S.C. § 216(b), and the amount of damages allegedly owed to Boulton, the Parties submit that this settlement amount fairly and reasonably compensates Boulton for any alleged overtime violations, liquidated damages, and attorneys' fees and costs.

### III.    LEGAL STANDARD

Section 216(b) of the FLSA permits an employee to recover unpaid overtime compensation by suing an employer "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA's overtime compensation provisions are "mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified

by contract or by settlement." *Kritzer v. Safelife Solutions, LLC*, No. 2:10-cv-0729, 2012 WL
1945144, at *5 (S.D. Ohio May 30, 2012) (citing *Dillworth v. Case Farms Processing, Inc.*, No.
5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010), and *Brooklyn Sav. Bank v.
O'Neil*, 324 U.S. 697 (1945)).

There are generally two ways in which claims for back wages arising under the FLSA can
be settled or compromised. *See Lynn's Food Stores*, 679 F.2d at 1352-53. First, the Department of
Labor can supervise a settlement. *See Collins v. Sanderson Farms, Inc*., 568 F. Supp. 2d 714, 719
(E.D. La. 2008) (citing 29 U.S.C. § 216(c)). Second, "[w]hen employees bring a private action for
back wages under the FLSA, and present to the district court a proposed settlement, the district
court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food
Stores*, 679 F.2d at 1353 (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946)).

In reviewing a proposed FLSA settlement, a court must determine whether the settlement
is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food
Stores*, 679 F.2d at 1355; *see also Green v. Hepaco, LLC*, No. 2:13-cv-02496, 2014 WL 2624900,
at *3 (W.D. Tenn. June 12, 2014). Courts consider five factors when making that determination:

> (1) the plaintiff's range of possible recovery; (2) the extent to which
> the settlement will enable the parties to avoid anticipated burdens
> and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties; (4)
> whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of
> fraud or collusion.

*Williams v. Alimar Sec., Inc.*, No. 13-cv-12732, 2016 WL 6405798, at *3 (E.D. Mich. Oct. 31,
2016) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). "A district
court may choose to consider only factors that are relevant to the settlement at hand." *Snook v.
Valler Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015).

## IV.    ARGUMENT

### A.    The settlement is within the range of possible recovery for Boulton.

With respect to the first factor, the settlement provides Boulton with a guaranteed monetary amount that is well within the range of his possible recovery here. Assuming for the sake of argument that Boulton had won on the merits of his FLSA claim, he would still need to prove his damages. *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017). That would not be a simple task here, given that Millennium did not track his hours worked. As such, Boulton would be required to prove his unpaid wages using the "just and reasonable inference" standard outlined in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1945). *See, e.g., Stansbury v. Faulkner*, No. 2:18-cv-02746, 2020 WL 3249983, at *6 (W.D. Tenn. June 16, 2020) (citing *Mt. Clemens*, 328 U.S. at 687-88; *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 816 n. 10 (6th Cir. 2015)).

Boulton worked for Millennium from approximately September 2020 through February 2022. *See* Dkt. 1 at ¶ 10; Dkt. 13 at ¶ 10. Boulton filed suit on May 12, 2023. The FLSA carries a standard two-year limitations period. *See* 29 U.S.C. § 255(a). Under a two-year limitations period, Boulton would have worked approximately 38 weeks within that relevant time period. If Boulton could demonstrate the Millennium violated the FLSA "willfully" (which is a high burden), he would be able to extend the limitations period to three years. *Id.* During that third year, Boulton estimates he worked for Millennium for approximately 33 workweeks (for a grand total of 71 total workweeks).

Boulton was paid an annual salary of $45,000, which results in an average weekly pay of $900 (assuming 50 workweeks per year). Boulton estimates he worked approximately 63 hours per workweek, resulting in an average regular rate of $14.29 per hour and an average overtime rate

of $21.44 per every hour worked after 40. Assuming a two-year limitations period and using these estimates/averages, Boulton's potential overtime damages were estimated to be approximately $6,240. If Boulton were able to prove willfulness, his third year of damages would have increased his recovery by an additional $5,400 (approximately) for a total recovery of approximately $11,640.

If the settlement is approved, Boulton's net recovery after deducting attorneys' fees and costs would be approximately $11,285 (before taxes). In other words, Boulton's net settlement recovery would result in receiving 180% of his estimated two-year damages, or 97% of his estimated three-year damages. If liquidated damages were awarded under 29 U.S.C. § 216(b) (which is not automatic), Boulton's estimated two-year damages would be approximately $12,480 (his net settlement would result in approximately 90% of that estimated damages amount), and his total three-year damages would be approximately $23,280 (his net settlement would result in approximately 49% of that estimated damages amount). Since willfulness is a high burden to meet and liquidated damages under § 216(b) are not guaranteed, Boulton's net settlement recovery is well within the reasonable range of his potential damages and provides Boulton with a guaranteed, valuable recovery. The Court should find this factor weighs heavily in favor of approval.

**B.    Settlement will avoid litigation expenses for both sides and dispenses with potential litigation risks.**

This case is in the early stages prior to much discovery or motion practice taking place. While both Parties are confident of their positions on the merits, the ultimate question here is whether Boulton is better served if the litigation is resolved and he receives compensation for his disputed claims rather than spending time, energy, and expenses litigating his claim toward an (at this point of the case) uncertain result down the line. The risks posed by Millennium's categorical denial of Boulton's claims, as well as the subjective dispute over what his primary job duties

entailed, justifies a compromise which provides a certain and immediate settlement payment to Boulton and provides Millennium with peace-of-mind and avoidance of what would surely be expensive litigation costs and expenses if the case were to proceed through discovery, briefing the "similarly situated" issue under the Sixth Circuit's newly-announced standard in *Clark v. A&L Homecare and Training Center*, 68 F.4th 1003 (6th Cir. 2023), and briefing dueling dispositive motions.

With the Court's approval, the Parties will be resolving all of Boulton's individual wage-and-hour claims, as well as any other individual claims Boulton might have based on the facts alleged in the Original Complaint. This settlement would resolve all of Boulton's claims in the case and would result in a full and final dismissal of the entire lawsuit.[1] This factor weighs in favor of approval.

**C.    The settlement is the result of good faith, arm's-length settlement negotiations between experienced wage-and-hour counsel; there was no fraud or collusion here.**

The settlement was reached by way of good faith, arm's-length, and adversarial settlement negotiations. Both sides disputed the others' characterization of the facts and the ultimate merits. Both sides were represented by able counsel who are experienced in wage-and-hour litigation, who advised their respective clients on the potential pros, cons, risks, and rewards of continued litigation. In reaching the settlement, both sides continue to believe their side would ultimately prevail in the litigation but decided that it was more efficient and cost-effective to resolve Boulton's individual claims early in the case.

---

[1]    While Boulton originally sought to pursue a collective action under 29 U.S.C. § 216(b), this settlement would only resolve Boulton's individual claims and does not seek to release or resolve any other individuals' claims besides Boulton. No other plaintiffs besides Boulton have joined the litigation, so this settlement would not adversely affect any putative collective action members.

In further support that the settlement is the result of good faith, arm's-length negotiations and not the result of fraud or collusion, the settlement provides for terms that courts routinely find are reasonable and fair in FLSA settlements. For example, the settlement does not include a confidentiality clause that could offend what some view as the FLSA's objective of transparency. *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010); *Galvez v. Americlean Servs. Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 WL 1715689, at *4 (E.D. Va. May 15, 2012). The settlement also does not seek to release claims beyond Boulton's wage-and-hour claims, or any other claims that could have been asserted by Boulton based on the facts alleged in the Complaint. *See O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 19-cv-2378, 2020 WL 7634780, at *4, 11 (W.D. Tenn. Aug. 4, 2020) (finding scope of release in FLSA case appropriate where the released claims "share a factual predicate with the allegations made by Plaintiffs[,]" and "[t]he scope of the [] release is appropriate because 'the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement'" (citation omitted)).

These are strong indicia that the settlement is not the result of fraud or collusion, but instead is the result of good faith, arm's-length settlement negotiations. This factor weighs in favor of approval.

**D.    Boulton's requested attorneys' fees and costs are reasonable.**

As noted above, as part of the settlement negotiations and in reaching the final agreement, the Parties included consideration of Plaintiff's attorneys' fees and costs to which Plaintiff's counsel is entitled. The Sixth Circuit has instructed that "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in FLSA cases] encourages the vindication of congressionally identified policies and rights." *Fegley v.*

*Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *see also Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n. 16 (1981) ("To encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonably attorney's fees and costs" (internal citation omitted)). The FLSA requires that attorneys' fees and costs be reasonable. *See* 29 U.S.C. § 216(b). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 45, 471 (6th Cir. 1999) (internal quotation marks omitted and alterations adopted).

Here, Plaintiff's counsel's portion of the award apportioned as attorneys' fees and costs amounts to approximately $8,715 of the $20,000 gross settlement amount. Courts have approved proportionally similar amounts as fair and reasonable in FLSA settlements close to this size. *See Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc.*, No. 17-CV-272 (KAM) (LB), 2019 WL 2526087 (E.D.N.Y. June 19, 2019) (approving $11,066 in attorneys' fees and costs as reasonable in approving FLSA settlement totaling $25,000)[2]; *see also Brassfield v. Evergreen Hauling, LLC*, 2019 WL 1768163 (N.D. Miss. Apr. 22, 2019) (finding an award of $11,675 in attorneys' fees and costs was reasonable in approving FLSA settlement which resulted in a net payment to the plaintiff of $6,930). The requested amount is also below the lodestar amount of Plaintiff's counsel's fees incurred. Should the Court desire to review Plaintiff's counsel's billing records, the documents will be promptly provided to the Court for *in camera* review.

---

[2]    In comparison, the fees and costs approved as reasonable in *Abreu* came to 44.24% of the gross settlement amount of $25,000. Here, Plaintiff's counsel's requested fees and costs are approximately 43.6% of the gross settlement amount of $20,000.

## V.    CONCLUSION

This proposed FLSA settlement is the product of arm's-length negotiation between competent attorneys experienced in wage-and-hour matters, and the settlement fairly and reasonably resolves several bona fide disputes. The proposed FLSA Settlement Agreement and Plaintiff's attorneys' fees satisfy the criteria set forth under the applicable case law and regulations. For these reasons and all those set forth above, the Court should grant the Parties' Joint Motion for Approval of the Settlement Agreement.

WHEREFORE, Plaintiff and Defendant respectfully request the Court approve their settlement in this matter and dismiss the lawsuit with prejudice.

Respectfully and jointly submitted on August 2, 2023

/s/ William M. Hogg_____
Michael A. Josephson (*Pro Hac Vice*)
Andrew W. Dunlap (*Pro Hac Vice*)
William M. Hogg (*Pro Hac Vice*)
Olivia Beale (*Pro Hac Vice*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com
obeale@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

Bryce W. Ashby (TN Bar No. 026179)
**DONATI LAW, PLLC**
1545 Union Avenue
Memphis, Tennessee 38104

/s/ Jennifer S. Hagerman (with permission)__
Jennifer S. Hagerman (TN #12147)
Sarah E. Stuart (TN #35329)
**BURCH, PORTER & JOHNSON, PLLC**
130 North Court Avenue
Memphis, TN 38103
T:  (901) 524-5000
Email: jhagerman@bpjlaw.com
        sstuart@bpjlaw.com

*Counsel for Defendant Millennium Search, LLC*

901-278-1004 – Telephone
901-278-3111 – Facsimile
bryce@donatilaw.com

*Counsel for Plaintiff Alexander Boulton*